And we'll move to our second case this morning, McCorkle v. Kijakazi. Good morning. Mr. Forbes, good morning. My name is Randall Forbes. I represent the Disability Claimant. This is a case that was decided at what we call Step 4, which I know all of you are familiar with. And a couple of points. This is a worker that has a very long, consistent work history before the alleged onset date. And that's important context. The second thing when we're dealing with migraines is that migraines are not objectively diagnosed by test, whether it's MRIs or CT scans or the like. They are a clinical diagnosis based upon the doctor's examination of the patient and the identification of certain presentations of the headache. Here, the claimant tried typical migraine medications. Tried Maxalt, which is prophylactic or preventative. Imitrex, which I believe is more of a long-term preventative. And then also tried Propranolol, which generally slows blood pressure, which the thought is that it will then help the brain deal with the issues of constricting and dilation of blood vessels. Mr. Forbes, focusing on the evidence in the record, is there any evidence that her migraines worsened over time? And the reason I'm asking you that question is because the migraines seemed to have started about 1998, about 10 years after that car accident. And she worked, did she not, from 1998 until 2018. And so she worked while she was experiencing migraines. So did they worsen over time? I don't know if there's anything in the record specifically that that occurred. But the most important piece of evidence that that did occur is that this person stopped working. She had this long history of work at a sedentary job, not a lot of exertion required. I would suggest that her job... Does the record show that she, what was the, didn't she faint or have a fainting spell or something? And that's what caused her to leave her last job? Yeah, I would have to look that up. I'm not totally clear on that right at the moment. During my break I'll concentrate on that. This is the kind of job, though, that if you are a migraine sufferer or a chronic headache sufferer, it eventually will aggravate it. It's like our work that we do. In fact, I'm a migraine sufferer, and the only reason I can work is that I'm the boss, and so I can determine which 10 hours of every day I work, or 14 sometimes. But when people are in jobs that are regimented eight hours a day, five days a week, and they don't have a choice, then migraines interfere with the ability to do work. I do think that there's some artful hyper-definition of the impairment here. Yes, they claim it has vertigo, but they claim it also has chronic headaches, well documented. And in essence, the impairment is migraine with vertigo and extensive nausea, vomiting, and dizziness. The ALJ focuses on vertigo, but that then means that the functional limitations can be centered upon postural or exertional rather than endurance limitations like absences or breaks. So, I mean, there was a targeting. And I know that I do say in the brief that migraines should have been designated severe, but regardless of whether it's designated as severe or not, a non-severe impairment can support limitations, and here the limitations are absences and unpredictable breaks. Mr. Forbes, during her testimony at the hearing, did she bring up or describe the fact that she was suffering from nausea and vomiting that hindered her from working? I don't recall on that. I apologize. I was not focusing as much on testimony perhaps as I should have. The other point is that migraines wax and wane, and they don't always present the exact same way each time. So you're going to see vertigo, you're going to see headache, you're going to see nausea and vomiting, you're going to see all of them together. However, I think one of the things that is instructive is the judge's own words here, and I will go to them. There's some discussion of migraine headaches, but claim his description of her migraine symptoms appear rather atypical. That phrase right there assumes that all migraine headaches present exactly the same way. They don't. Her physician did not propel her towards typical migraine treatment. She'd already tried the typical migraine treatment in the maxillotium atrexin and propranolol. Granted, she didn't have Botox treatments, but that's her physician's job. And it doesn't appear that migraines are a formal diagnosis. Well, I mean, how many times does it have to be mentioned in the record by a physician before it becomes a formal diagnosis? And if the ALJ is suggesting that that gives the administrative room in order to declare it not a proper impairment, that's just incorrect. And then finally, there's a statement in here that suggests that the fact that migraine medications did not work means that it wasn't. It's not a migraine impairment. But that borders on ridiculous because the diamond headache here in Chicago would not exist or be needed if migraine medications always dealt with the problem. So that is a statement made by the ALJ that has no logical connection to what's going on here. Why would that statement be made? And as I suggest, there's attempt here at hyper-definition of what's going on in order to support an RFC that does not include the absence of limitations. So I will reserve the rest of my time. Thank you. Thank you. Ms. Jeffrey. Good morning. May it please the court, I'm Kia Jeffrey, representing the Commissioner of Social Security. The ALJ's decision in this case is an example of the proper way to evaluate an impairment that's not severe. The ALJ explained that migraines were non-severe because treatment records in this case were unclear, but she still considered the impairment throughout the rest of her decision. And she included residual functional capacity limitations to address the most prevalent complaint in the record, which was vertigo. First to address McCorkle's arguments regarding the diagnosis itself. Initially, I'd like to note that McCorkle's arguments emphasizing the diagnosis itself are misplaced. The diagnosis does not show the severity of the impairment or the functional limitations that it would cause. And the ALJ did provide good reasons for finding that there did not appear to be a formal migraine diagnosis in the record. Yeah, I don't know about that. I know the ALJ said that observation is correct, but when I took a look at Dr. Fraser's records, migraines are all over him. It's everywhere. And so for him to be observing the migraines and trying to help Ms. McCorkle with them, it seems to me that it's a diagnosis. Just over and over and over again that way. And as her primary care physician, Fraser went further and he came forward with those letters, right? Saying the migraine problem is severe enough that I don't think she can work that way. And I'm concerned about how the ALJ handled that. You're definitely right, vertigo is all over this too. The vertigo issue seems sufficiently dealt with with the cane because it goes to the dizziness, the imbalance, all of that. But the cane is not an accommodation for the migraines, right? Because Ms. McCorkle testified that the migraines knock her down. She's got to lay down and she's got to lay down in dark rooms that way. So what's your reaction to those observations? Your Honor, I think one point I'd like to make is that in actually looking at Dr. Fraser's treatment records, he did appear to have some questions about the diagnosis at different points. In one record, he noted that the headaches might be more tension related rather than migraine. And in one of the opinions that you noted, he wrote either chronic headaches or migraines. So there did appear to be some question in the record from Dr. Fraser regarding the proper diagnosis. But Your Honor is correct, there are several mentions of migraines. And to the extent that the court were to find that the ALJ should have acknowledged that diagnosis as a formal diagnosis, there's still no reversible error at step two because the ALJ continued to consider Ms. McCorkle's headaches throughout the rest of her decision and consider how they would impact her functionally. Your Honor noted the residual functional capacity limitation including a cane. The ALJ also limited Ms. McCorkle to sedentary work requiring her to stay seated, no climbing of structures, no working at heights or around machinery. And the reason those limitations are important and that they also address the headache issue is that when McCorkle complained of headaches, she often complained of dizziness and lightheadedness. We don't really see any separate limitations that are occurring from the headaches. She did testify to having three to five migraines per day and having to lie down for those migraines. However, when we look at Dr. Fraser's treatment records, she wasn't making those same complaints to Dr. Fraser during her treatment. She more so indicated that the headaches were more of an episodic type of symptom that didn't really impair her daily life. He thought they were enough, though, to keep her out of work at least five days a month. And if there's about how many working days a month? About 20? So five out of 20 is a meaningful number, is it not? Yes, it is, Your Honor. But the ALJ gave good reasons for finding Dr. Fraser's opinions only partially persuasive. She noted the fact that Dr. Fraser's own examinations were essentially normal and she noted the fact that McCorkle's complaints to Dr. Fraser about headaches were different from how she testified to extremely severe symptoms during the administrative hearing. And ultimately, the ALJ's residual functional capacity finding was supported by state agency physician opinions, and those physicians had the chance to review her treatment records up through March 2019, which included Dr. Fraser's treatment records and McCorkle's complaints of frequent headaches. So the ALJ actually went beyond those opinions and found that McCorkle did require the use of a cane to address rather severe symptoms. When the ALJ says she didn't see any indication of a referral for more typical migraine treatment when the migraines are quite intense and persistent that way, how does the ALJ have any idea what typical migraine treatment is? It's a medical question, is it not? It is, Your Honor. I didn't see anything in the record about the different treatment options when somebody is really suffering from migraines. I'm sure that the treatment can become more progressive and advanced, but I don't know how an ALJ would know that without medical evidence, any more than you would know it or I would know it. Yes, Your Honor. I think, and I'm trying to find it here in the ALJ's decision, what the ALJ was referring to was the fact that McCorkle had been referred to a neurologist and there was no evidence that she actually followed up on that referral. And in addition, there was the testimony from Ms. McCorkle at the hearing that her migraine medications were not effective and she ultimately was using Tylenol-3 to treat her symptoms. And the ALJ considered McCorkle's treatment as just one factor in her analysis of the entire record. It wasn't the defining or the most important factor that the ALJ considered to determine whether or not her impairment was severe and whether or not it required additional functional limitations here. Thank you. If the panel doesn't have further questions for me, I would just reiterate that the ALJ properly considered the impairment. Even if the court were to find that the ALJ should have found that migraine was a formal diagnosis or was severe, the important question is whether or not the ALJ formulated a residual functional capacity finding that incorporated all the limitations that are supported by the record. And we would submit that she did. Do you have a thought on that question I asked Mr. Forbes about? Do you have any recollection? I mean, I know you know the record well. Anything about the migraines worsening over time? Your Honor, I don't believe there's any record showing that the migraines worsened over time. And as you noted, it is an important factor to note. McCorkle has emphasized the fact that she had a very long work history and that she stopped working. But she did have that long work history while having these migraines. And the ALJ found that she could return to her past relevant work here. Thank you. Thank you. Thank you. Mr. Forbes. I believe that record page, administrative record page 46, that's the old fashioned enumeration, not the official court enumeration. You will find, yes, that she was fainting at her desk, but that things were getting worse. And I think the headache is mentioned there. I did not find the words nausea or vomiting at the hearing. In fact, when I did my analysis of the medical record, it shows up sometimes as yes, it's happening, and other times it's not, which is actually, I think, consistent with the presentation of migraines. It does not always fit the textbook presentation. I mean, it varies per the individual. This is close. It's a close case. Almost all migraine cases are close cases because of the way that they're diagnosed. And ultimately, it does boil down to whether the limitations and absences or triggers or the traditional symptoms are, whether they prevent work. Mr. Forbes, your time has expired, so if you could wrap up. Hard worker, that's got to amount to something. And people just don't leave jobs when they've spent their lives doing them. And sometimes it just boils down the person in that position when they say they're disabled. They really are. Thank you. Our thanks to both counsel. The case is taken under advisement.